PARIENTE, J.,
specially concurring.
I concur in the majority’s decision to affirm the postconviction motion and deny the habeas petition. I write only to address the postconviction court’s decision refusing to allow expert testimony to support Lynch’s ineffective assistance claim. As the majority points out, attorney Robert Norgard has testified as an expert in approximately fifteen capital cases, most recently in Morton v. State, 995 So.2d 233 (Fla.2008).
In this case, the trial court allowed a complete proffer of Norgard’s expert testimony but then disallowed all of it. The State essentially argued that, due to his vast experience in death penalty cases, the trial judge, Judge Eaton, did not need an expert to assist him in determining whether the attorney was deficient in his performance. I certainly agree that Judge Eaton is among the most knowledgeable judges in Florida on the death penalty. My concern, however, is that we do not appear to predicate the admissibility of expert testimony in postconviction proceedings on a particular judge’s level of experience in the area of the death penalty. Ultimately it is this Court’s decision, as a mixed question of law and fact, as to whether the attorney’s conduct was defi *87 cient.[15] While expert testimony is not necessary to establish a violation of Strickland, it is certainly one more useful source of evidence in allowing the court to make this all-important decision.
In several cases since its landmark decision in Strickland, the United States Supreme Court has set forth guidelines for how courts should analyze and review the deficiency and prejudice prongs of an ineffective assistance of counsel claim. As to deficiency, which involves an examination of whether counsel’s performance fell below the norms of professional conduct, the Court has indicated that “[n]o particular set of detailed rules for counsel’s conduct can satisfactorily take account of the variety of circumstances faced by defense counsel.” Id. at 688-89, 104 S.Ct. 2052. Therefore, as articulated by the Court in Strickland and quoted by the majority in this case, a postconviction court is not limited to a defined body of rules, but may look to any number of sources to determine whether counsel’s performance was reasonable in light of the “[pjrevailing norms of practice.” Id. at 688, 104 S.Ct. 2052. For instance, on several occasions, the Supreme Court has relied on the American Bar Association Standards for Criminal Justice as “guides” for what is reasonable capital representation. See, e.g., Wiggins v. Smith, 539 U.S. 510, 524, 128 S.Ct. 2527, 156 L.Ed.2d 471 (2003) (“Counsel’s conduct similarly fell short of the standards for capital defense work articulated by the American Bar Association (ABA) — standards to which we long have referred as ‘guides to determining what is reasonable.’ ”) (quoting Strickland, 466 U.S. at 688, 104 S.Ct. 2052); Williams v. Taylor, 529 U.S. 362, 396, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000) (citing 1 ABA Standards for Criminal Justice 4-4.1, cmt. at 4-55 (2d ed.1980), in concluding that counsel failed to conduct an adequate mitigation investigation and was therefore deficient); Strickland, 466 U.S. at 688, 104 S.Ct. 2052 (“Prevailing norms of practice as reflected in American Bar Association standards and the like ... are guides to determining what is reasonable-”). Further, in determining that counsel’s mitigation investigation was unreasonable in Wiggins, the Court also relied upon the fact that defense counsel failed to prepare a social history report even though counsel acknowledged that this was standard practice in capital cases at the time of the trial. 539 U.S. at 524, 123 S.Ct. 2527.
The “proper measure of attorney performance remains simply reasonableness under prevailing professional norms.” Wiggins, 539 U.S. at 521, 123 S.Ct. 2527 (quoting Strickland, 466 U.S. at 688, 104 S.Ct. 2052). In this case, the defendant sought to introduce the testimony of Nor-gard, a criminal defense attorney with extensive experience in capital cases, to establish the “the standard of practice by a Florida capital defense attorney in the years 1999 to 2001,” when Lynch’s trial took place. Although Norgard was not admitted as an expert, the trial judge personally questioned him about the subject matter of his proposed testimony and then allowed the defense to proffer Norgard’s testimony for this Court’s review. Initially, Norgard explained the reasons for his testimony:
*88 I’ve been called as a witness ... to testify as to what would be expected of reasonably competent counsel in a capital case, basically establishing a baseline as to what attorneys are expected to do in a capital case, how they go about investigating a capital case, such as mitigation, the use of mental health experts, other experts, decisions such as guilt phase strategy tactics and other considerations, things of that nature.
For example, in the Wiggins case by the United States Supreme Court, one of the facts that the court hinged their decision on was that there was a social history routinely done by criminal defense lawyers in that area in capital cases. The attorneys in that case had failed to do a routine social history consistent with what other attorneys in the area of capital defense perform. And, so, basically, unless there was evidence as to what reasonably competent counsel does in capital cases, you have no baseline within which to measure the performance of the attorneys in a particular case.
Typically in the cases in which I have been testifying, I’m asked those type of questions.
In many instances there are questions as to whether or not a particular area of performance by defense counsel was something that was routinely known at a particular point in time.
When the trial judge allowed the defense to proffer his testimony for the record, Norgard was questioned about what competent counsel must consider in advising a defendant to plead guilty or waive a jury trial, such as whether there had been a full investigation into the case and the possible defenses that could or should be waived, both as to the murder charge and any underlying felony charges. Norgard also proffered testimony about the reasons for requiring counsel to consult with a forensic expert and how detailed a mitigation investigation should be, including researching background and character, prior criminal history, facts surrounding the crime, and family history — “essentially familiarizing yourself with a person’s entire life.” Norgard also discussed how counsel must be able to utilize mental health experts and know the difference between a psychologist and a neuropsychologist. A review of his proffered testimony indicates that he was not attempting to interpret the prongs of Strickland, which is an issue of law within the purview of the postconviction court, but rather was seeking to explain the prevailing standards of competent counsel at the time of the trial.
Though Norgard conceded that there are other “guides” that could be introduced to establish the prevailing norms of representation, such as the Florida Public Defender Death Penalty Manual and other seminar materials, he noted one benefit of using expert testimony over written materials is that it provides “a live person who can answer questions that are potentially hypothetical or, you know, about things relevant to the particular ease.”
I agree that no harmful error occurred in this case in excluding the expert’s testimony since prejudice rather than deficiency is the ultimate reason for denying the claim. However, I would urge trial judges, as they have done in the past, to allow expert testimony on these issues if the witness is qualified, prepared and available to testify. Such testimony may not be the key element in establishing deficiency but it certainly provides a useful “guide” in determining whether counsel’s performance was reasonable.
ANSTEAD, J., concurs.

. To establish deficient performance, the defendant must show that "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment,” Strickland, 466 U.S. at 687, 104 S.Ct. 2052, and that "counsel’s representation fell below an objective standard of reasonableness.” Id. at 688, 104 S.Ct. 2052. Following the United States Supreme Court's decision in Strickland, this Court has held that the claimant must first "identify particular acts or omissions of the lawyer that are shown to be outside the broad range of reasonably competent performance under prevailing professional standards.” Maxwell v. Wainwright, 490 So.2d 927, 932 (Fla.1986).